IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Christina Ortiz,<br><br>    Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting Commissioner of the Social Security Administration,<br><br>    Defendant. | No. CV 12-226-TUC-RCC (CRP)<br><br>**REPORT & RECOMMENDATION** |

Plaintiff has filed the instant action seeking review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Pending before the Court are Plaintiff's Opening Brief (Doc. 15) ("Plaintiff's Brief"), Defendant's Opposition to Plaintiff's Opening Brief (Doc. 16) ("Defendant's Brief"), and Plaintiff's Reply (Doc. 17). For the following reasons, the Magistrate Judge recommends that the District Court, after its independent review, remand this matter for further proceedings.

**BACKGROUND**

In December 2008, Plaintiff filed an application for supplemental social security income under the Social Security Act. (Administrative Record ("AR.") 106). Plaintiff, who was born in 1970 and completed high school, worked from 1995-1996 as a cosmetologist and for one week in 2003 as a secretary. (AR. 53, 106, 130, 169-74, 204). Plaintiff stopped working as a cosmetologist when she "got pregnant, and I never went back 'cause...that's when I started getting a lot of hand pain, the carpal tunnel.'" (AR. 52; *see also* AR. 175 (when working as a cosmetologist, Plaintiff had difficulty and pain using her hands)). While

1  working as a secretary, her back went out and the keyboard was "too much on my hands...."
2  (AR. 53). She alleges she has been unable to work since January 1, 2003 due to fibromyalgia,
3  herniated disc, osteoarthritis, degenerative disc and joint disease, restless leg syndrome,
4  spinal degeneration, carpal tunnel, anxiety and depression. (AR. 106, 124).  Plaintiff would
5  like to work, but is unable to because she is always in pain.  (AR. 152).  Plaintiff's
6  application was denied initially and on reconsideration, after which Plaintiff requested a
7  hearing before an administrative law judge ("ALJ"), who subsequent to the hearing,
8  concluded Plaintiff was not disabled. (AR. 24-31, 43-5, 67, 74). Plaintiff requested Appeals
9  Council review and submitted additional evidence.  (AR. 198-201, 404-19, 440).  On
10 February 7, 2012, the Appeals Council denied Plaintiff's request for review,  rendering the
11 ALJ's November 19, 2010 decision  the final decision of the Commissioner.  (AR. 1-4).

12 Plaintiff then initiated the instant action, raising the following grounds for relief: (1)
13 the ALJ's finding that Plaintiff was limited to "frequent handling" (AR 27)  required
14 vocational expert testimony; (2) the ALJ's finding that Plaintiff needed to change position
15 on occasion is not reviewable; and (3) the ALJ improperly rejected treating Dr. Wristen's
16 opinion.

17 **STANDARD**

18 The Court has the "power to enter, upon the pleadings and transcript of the record, a
19 judgment affirming, modifying, or reversing the decision of the Commissioner of Social
20 Security, with or without remanding the cause for a rehearing."  42 U.S.C. §405(g).  The
21 factual findings of the Commissioner shall be conclusive so long as they are based upon
22 substantial evidence and there is no legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Tommasetti*
23 *v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). This Court may "set aside the
24 Commissioner's denial of disability insurance benefits when the ALJ's findings are based
25 on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*
26 *v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

27 Substantial evidence is "'more than a mere scintilla[,] but not necessarily a
28 preponderance.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871,

- 2 -

873 (9th Cir. 2003)); *see also Tackett*, 180 F.3d at 1098.  Further, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  Where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098 (*citing Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). Moreover, the Commissioner, not the court, is charged with the duty to weigh the evidence, resolve material conflicts in the evidence and determine the case accordingly.  *Matney,* 981 F.2d at 1019. However, the Commissioner's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"  *Tackett,* 180 F.3d at 1098 (*quoting Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir.1998)). Rather, the Court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (*quoting Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

**DISCUSSION**

Social Security Administration regulations require the ALJ to evaluate disability claims pursuant to a five-step sequential process.  20 C.F.R. §§404.1520, 416.920.  To establish disability, the claimant must show she has not worked since the alleged disability onset date, she has a severe impairment, and her impairment meets or equals a listed impairment or her residual functional capacity ("RFC")[1] precludes her from performing past work.  Where the claimant meets her burden, the Commissioner must show that the claimant is able to perform other work, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience.

---

[1]RFC is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 3 -

**THE ALJ'S PERTINENT FINDINGS**

The ALJ found that Plaintiff had the following severe impairments: mild degenerative disc disease; generalized pain syndrome/fibromyalgia; mild to moderate heel spurs; impingement syndrome of the shoulder; and carpal tunnel syndrome. (AR. 24). He determined that Plaintiff had the RFC to perform sedentary work, except that she "is restricted from prolonged standing and needs to change positions on occasion. The claimant can engage in frequent handling." (AR. 26-7). The ALJ found that although Plaintiff had no past relevant work, consideration of the Medical-Vocational Guidelines ("Grids") resulted in the conclusion that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" (AR. 30). Therefore, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since December 18, 2008, the date the application was filed. (AR. 31).

**LIMITATION ON HANDLING**

The ALJ stated that Plaintiff's limitation to frequent handling had "little or no effect on the occupational base of unskilled sedentary work." (AR. 26-7, 31). Therefore, the ALJ used the Grids as a framework for determining Plaintiff was not disabled. Plaintiff argues that the ALJ should have called a vocational expert to support his step-five determination. *See* 20 C.F.R. 416.912(g) (the Commissioner has the burden of production at step five).

The Grids take administrative notice of unskilled occupations that exist at the sedentary, light and medium levels of exertion. (*See* Defendant's Brief, p. 8 (*citing* 20 C.F.R. pt. 404, subpt. P, app. 2 §203.00; *Heckler v. Campbell,* 461 U.S. 458 (1993)); *see also Tackett*, 180 F.3d at 1101. When a claimant cannot perform substantially all the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the Grids are used as framework unless there is a rule directing a conclusion of disabled without considering additional exertional and/or non-exertional limitations. Social Security Ruling[2]

---

[2]Social Security Rulings do not carry the force of law, but they constitute Social Security Administration interpretations of the statute it administers and of its own regulations

- 4 -

1 (SSR) 83-12, 1983 WL 31253; SSR 83-14, 1983 WL 31254. "A particular exertional or nonexertional limitation may have very little effect on the range of work remaining that an individual can perform. The person, therefore, comes very close to meeting a table rule which directs a conclusion of 'Not disabled.'" SSR 83-14, 1983 WL 31254 at *3 (noting that a limitation to unskilled sedentary work with an additional loss of bilateral manual dexterity that is significant can warrant a conclusion of "Disabled."). "Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of work...the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. The [ALJ] will consider the extent of any erosion of the occupation base and assess its significance. In some instances, the restriction will be so slight that it would clearly have little effect on the occupational base." SSR 83-12, 1983 WL 31253 at *2. At bottom, "an ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case." *Hoopai v. Astrue,* 499 F.3d 1071, 1076 (9th Cir. 2007) (holding that mild or moderate depression was not a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work which would render the grids inapplicable); *see also Tackett,* 180 F.3d at 1103-04 (where plaintiff had significant non-exertional limitation, ALJ cannot rely on the grids, but must call a vocational expert); *Widmark v. Astrue,* 454 F.3d 1063, 1070 (9th Cir. 2006) (ALJ was not permitted to use Grids without testimony of vocational expert where limitations regarding plaintiff's thumb restricted his ability to perform fine manipulation, given that "[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.")(*quoting* SSR 83-10, 1983 WL 31251 at *5).

---

and are given some deference as long as they are consistent with the Social Security Act and regulations. *Molina v. Astrue,* 674 F.3d 1104, 1114 n.5 (9th Cir. 2012); *Han v. Bowen,* 882 F.2d 1453, 1457 (9th Cir. 1989).

1   In Plaintiff's case, the ALJ concluded, without explanation, that the limitation to
2   "frequent" handling had "little or no effect on the occupational base of unskilled sedentary
3   work." (AR. 31). "Frequent" means occurring from one-third to two-thirds of the time. SSR
4   83-10, 1983 WL 31251 at *6.  The hands may be used to perform the  "exertional" functions
5   of lifting, carrying, pushing and pulling." 20 C.F.R. §416.969a(b).  They may also be used
6   to perform the "non-exertional" functions of reaching, *handling* and fingering.  20 C.F.R.§
7   416.969a(c)(1)(vi). There is a difference between fingering (fine manipulation) and handling
8   (gross manipulation).  SSR 96-9p, 1996 WL 374185; SSR 85-15, 1985 WL 56857 at *7.
9   Plaintiff persuasively cites SSR 96-9p:

> Manipulative limitations: Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of the fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.
> Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base. For example, example 1 in section 201.00(h) of appendix 2, describes an individual who has an impairment that prevents the performance of any sedentary occupations that require bilateral manual dexterity (i.e., "limits the individual to sedentary jobs which do not require bilateral manual dexterity"). When the limitation is less significant, especially if the limitation is in the non-dominant hand, it may be useful to consult a vocational resource.

SSR 96-9p, 1996 WL 374185 at *8 (emphasis in original).

Here, the ALJ's limitation applied to both of Plaintiff's hands.  Defendant counters that "where, as here, a claimant is limited to *frequent* handling, with no limitation on frequency, there is no significant erosion." (Defendant's Brief, p. 9) (emphasis in original). Read in context, Defendant's argument appears to be that Plaintiff was not limited with respect to "*repetitive* hand-finger actions."   (*Id.*) (emphasis in original).  However, Plaintiff aptly points out that "[i]t is unclear how the Commissioner imagined the hands being used if not for repetitive movements for up to two-thirds of the workday.  If the hands are being used for manipulation for up to two-thirds of the workday, almost necessarily they will be used repetitively."  (Reply, p. 3).

- 6 -

1    It is well-settled that "'[a] non-exertional impairment, if sufficiently severe, may limit
2 the claimant's functional capacity in ways not contemplated by the guidelines. In such a case,
3 the guidelines would be inapplicable.'" *Tackett,* 180 F.3d at 1102 (*citing Desrosiers v.
4 Secretary of Health and Human Servs.,* 846 F.2d 573, 577 (9th Cir. 1988)). Given the
5 Commissioner's recognition that "[m]ost unskilled sedentary jobs require good use of both
6 hands and the fingers; i.e., bilateral manual dexterity[]", SSR 96-9p, Plaintiff's limitation on
7 bi-lateral handling supports the conclusion that such a finding would fall outside the criteria
8 used in the Grids, "barring the ALJ from relying on them alone and requiring the testimony
9 of a vocational expert." *Widmark,* 454 F.3d at 1070 (citations omitted); *see also* SSR 85-15,
10 1985 WL 56857 at *7 ("Varying degrees of limitations would have different effects, and the
11 assistance of a [Vocational Expert] may be needed to determine the effects of the
12 limitations."). Because the ALJ improperly used the Grids to make the final disability
13 determination, this matter must be remanded for consideration of vocational expert
14 testimony. *Widmark,* 454 F.3d at 1070; *Tackett,* 180 F.3d at 1104.

**CHANGING POSITION**

16    The ALJ found that Plaintiff "need[ed] to change positions on occasion." (AR. 27).
17 Later in his decision, the ALJ stated that with regard to his finding that Plaintiff "be afforded
18 the opportunity to periodically change position...[,] her change of position should not be more
19 than the normally accepted break periods for sedentary work." (AR. 30). Plaintiff argus the
20 ALJ's finding that she needed to change positions on occasion is ambiguous and
21 unreviewable because he did not define "on occasion" and he did not refer to changing from
22 sitting to standing, or from sitting to standing to walking positions. (Plaintiff's Brief, p. 9-10
23 (*quoting* SSR 96-9p, 1995 WL 374185 at *7 ("The RFC assessment must be specific as to
24 the frequency of the individual's need to alternate sitting and standing.")(emphasis omitted)).

25    Defendant asserts that "[i]t does not matter what position needed to be changed,
26 because any position change would be accommodated by the limitation in the [RFC]."
27 (Defendant's Brief, p. 10). This point is well taken and Plaintiff does not address it in her
28 Reply. (*See* Reply, p.4).

- 7 -

1    Defendant also contends that the ALJ clarified that Plaintiff's need to change position
2  should not be more than normally accepted break periods for sedentary work. (Defendant's
3  Brief, p. 10). The parties agree that the full range of sedentary work requires sitting for
4  periods of two hours. (*See id.* (*citing* SSR 96-9p, 1996 WL 374185 at *6); Reply, p. 4).
5  Plaintiff asserts that the ALJ's finding that Plaintiff needed to change positions on occasion
6  is materially inconsistent with his finding that "on occasion" was defined in terms of
7  "normal" breaks for sedentary work.  (Reply, p.4).  Instead of stating that Plaintiff can
8  perform the full range of sedentary work, which would include the break periods attendant
9  to same, the ALJ chose to add, among other things, that Plaintiff "needs to change position
10 on occasion." (AR. 26-7).  If the normal breaks included under the definition of sedentary
11 work would accommodate such position changes, it is not entirely clear why the ALJ would
12 have added such a limitation.  Thus, Plaintiff points out the ALJ's decision is materially
13 inconsistent.  In light of the fact that the Court has already determined that remand is
14 necessary for vocational expert testimony, this issue should also be clarified upon remand
15 as well.

**TREATING DR. WRISTEN'S OPINION**

It is well-settled that the opinions of treating physicians are entitled to greater weight than the opinions of examining or non-examining physicians. *Andrews v. Shalala,* 53 F.3d 1035, 1040-1041 (9th Cir. 1995); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) ("We afford greater weight to a treating physician's opinion because he is employed to cure and has a greater opportunity to know and observe the patient as an individual."); *see also* 20 C.F.R §§ 404.1527, 416.927 (generally, more weight is given to treating sources).  An ALJ may reject a treating doctor's uncontradicted opinion only after giving "'clear and convincing' reasons supported by substantial evidence in the record." *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998) (*quoting Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995)). Additionally,  "[a] treating physician's opinion on disability even if controverted can be rejected only with specific and legitimate reasons supported by substantial evidence in the record." *Id. See also Holohan v. Massanari,* 246 F.3d 1195, 1202-1203 (9th Cir. 2001).

1    In December 2008, Moira Wristen, M.D., Plaintiff's treating physician since at least
2 June, 1997 (AR. 184) opined that Plaintiff was medically "disabled because of her chronic
3 pain, degenerative dis[c] disease, and fibromyalgia." (AR. 296). In a July 2010 treatment
4 note, Dr. Wristen assessed chronic back pain, degenerative disc disease, plantar fasciitis,
5 restless leg syndrome, and opined that Plaintiff was disabled and "[h]as been unable to work
6 for many years and has chronic pain." (AR. 328). On August 27, 2010, Dr. Wristen
7 completed a form entitled Medical Work Tolerance Recommendations wherein she indicated,
8 *inter alia,* that Plaintiff: could not sustain full-time work; could not sit for more than 10-15
9 minutes at a time for total of 1-2 hours; should avoid bending, kneeling, crouching, and
10 squatting; could occasionally power grip, pinch with thumb and index finger, and do fine
11 movements such as typing or small assembly; and could frequently feel and touch. (AR.
12 399-400). To support her findings, Dr. Wristen noted "pain", and that Plaintiff "needed to
13 lay down for swelling...[illegible] and pain." (AR. 399). The ALJ did not specifically
14 discuss the August 2010 Work Tolerance Form. Instead, he cited the December 2008 and
15 July 2010 treatment notes wherein Dr. Wristen opined that Plaintiff's chronic pain,
16 degenerative disc disease, and fibromyalgia were disabling. (AR. 28 (*citing* AR. 296, 328)).
17 The ALJ "afforded little weight" to Dr. Wristen's "opinions...because they are quite
18 conclusory providing very little explanation of the evidence relied on in forming those
19 opinions. Additionally, her opinions contrasted sharply with other additional substantial
20 evidence in the record and the course of treatment provided by Dr. Wristen itself." (AR. 28).

21   Plaintiff objects to the ALJ's rejection of Dr. Wristen's specification regarding
22 Plaintiff's functional limitations as set out in the 2010 Work Tolerance form. (Reply, p.7).
23 Although the ALJ never specifically discussed the 2010 form, Defendant points out that he
24 rejected Dr. Wristen's opinions, in part, because she provided little explanation supporting
25 her findings and her opinions contrasted with the substantial evidence of record. (*See*
26 Defendant's Brief, p. 12; *see also* AR. 28). An ALJ may discredit a treating doctor's
27 opinions that are conclusory, brief, and unsupported by the record as a whole. *Batson v.*
28 *Commissioner of Social Security,* 359 F.3d 1190, 1195 (9th Cir. 2004). It cannot be disputed

1   that Dr. Wristen's notes on the 2010 Work Tolerance form were extremely brief. After the
2   ALJ issued his decision denying Plaintiff's application, Plaintiff submitted to the Appeals
3   Council a September 26, 2011 statement from Dr. Wristen indicating that Plaintiff
4   "continues...to suffer from chronic pain...; carpel tunnel syndrome with numbness and
5   tingling in her hands; chronic shoulder pain and back and knee pain; chronic fatigue
6   depression and lack of motivation." (AR. 399-400). She also opined that Plaintiff's carpal
7   tunnel syndrome and shoulder impingement would cause difficulty in performing repetitive
8   tasks with her upper arms; bilateral knee arthritis "could cause difficulty in any job that
9   required walking and standing for any period of time." (*Id.*). Dr. Wristen also stated that
10  Plaintiff's chronic pain necessitated moving around every 15-20 minutes and that "we are
11  trying an assortment of fibromyalgia medications." (*Id.*).

12  In denying Plaintiff's request for review, the Appeals Council indicated that it
13  "looked at..." Dr. Wristen's 2011 opinion and found the opinion did "not affect the decision
14  about whether [Plaintiff was] disabled beginning on or before November 19, 2010", the date
15  of the ALJ's decision. (AR. 2).[3] As Plaintiff points out, although Dr. Wristen's 2011
16  opinion assessed Plaintiff's then-current condition, the Doctor also pointed out that Plaintiff
17  continued to suffer from chronic issues that were diagnosed and in existence when the ALJ
18  made his decision. (Reply, p.6). The opinion in no way indicates that the conditions had
19  worsened since the ALJ's decision issued. Instead, Dr. Wristen's opinion in large part

---

[3] Where the Appeals Council considered evidence not previously presented to the ALJ, the Court may consider such evidence on review. *See Taylor v. Commissioner of Social Security,* 659 F.3d 1228, 1232 (2011) (acknowledging that court may consider physician's opinion which was rejected by the Appeals Council, to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and free of error."); *Lingenfelter v. Astrue,* 504 F.3d 1028, 1030 n.2 (9th Cir. 2007) (considering on appeal both the ALJ's decision and the additional material submitted to the Appeals Council); *Harman v. Apfel,* 211 F.3d 1172, 1180 (9th Cir. 2000) (recognizing that "[w]e properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review"); *Ramirez v. Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1449, 1452 ("we consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council.").

1 explains why Plaintiff's continued chronic issues impact exertional and non-exertional
2 activities.

3       Dr. Wristen had treated Plaintiff for over a decade, and her treatment notes
4 consistently documented, among other things, fibromyalgia trigger points and tender
5 paralumbar area. (AR. 261, 278, 276, 283, 293, 297, 295, 301, 317, 327, 329, 339, 342, 402;
6 *see also* AR. 322-23 (on referral from Dr. Wristen, rheumatologist Jeffery Loomer, M.D.,
7 confirmed diagnosis of fibromyalgia and pointed out Plaintiff's "chronic lower back pain...
8 may be contributing to her fibromyalgia symptomology.")). Notes also indicated stiffness
9 in the fingers (AR. 269), numbness and tingling in hands and arms (AR. 291, 329; *see also*
10 AR. 316 (Dr. Wristen ordered bilateral wrist splints)), elbow pain (AR. 291 (Depo-Medrol
11 injection administered for elbow pain)), x-rays of the knees showing arthritis (AR. 301); an
12 MRI showing spinal stenosis (AR. 301); and an x-ray showing a foot spur. (AR. 329).

13       Although, in February 2009, examining Dr. Suarez indicated Plaintiff "should be able
14 to return to any activities that she chooses" (AR. 213-14), the ALJ afforded only "some
15 weight" to the opinion because later evidence "show[ed] that the claimant is more physically
16 limited than Dr. Suarez determined and provides for such additional limitations..." as listed
17 in the ALJ's ultimate RFC assessment. (AR. 28; (*see also* AR. 213 (Dr. Suarez noted that
18 he did not have the EMG study to assess Plaintiff's carpel tunnel syndrome)).

19       As the ALJ recognized, much of the medical evidence came into the record after
20 examining Dr. Suarez issued his opinion. (AR. 28-29). Such evidence included: x-rays of
21 Plaintiff's shoulders showing no acute abnormalities and some bony changes which could
22 predispose Plaintiff to impingement (AR. 216); MRI of Plaintiff's lumbar spine showing
23 mild degenerative changes in the lower lumbar levels, shallow central protrusion at L4-5 with
24 mild central canal stenosis, shallow central protrusion at L5-S1, without central canal
25 stenosis, and a later x-ray of that same area showing mild to moderate degenerative changes
26 and transitional lumbosacral junction. (AR. 215, 369). Radiological testing of Plaintiff's feet
27 showed pes planus deformity with mild to moderate spurring in the plantar surface on the
28 right foot, and pes planus deformity with mild spurring on the left foot. (AR. 396; *see also*

1  AR. 397(on referral from Dr. Wristen, Steve Hollander, D.P.M. assessed probable bilateral
2  plantar fasciitis, bilateral posterior tibial tendon tenosynovitis, bilateral moderate excessive
3  pronation.).  Moreover, a December 2009 EMG showed bilateral carpal tunnel syndrome,
4  severe on the right and mild on the left (TR. 311; *see also* AR. 28).

5        The 2009 EMG study is of special concern given that it showed severe carpel tunnel
6  syndrome on the right, yet the ALJ only limited Plaintiff to bilateral handling frequently, and
7  nothing more, despite the fact that Dr. Wristen recommended other hand and finger
8  limitations.  Further, while the ALJ attempted to reconcile the objective medical evidence
9  that came into the record after Dr. Suarez's opinion, there is no showing that he considered
10 same in light of Plaintiff's "generalized pain syndrome/fibromyalgia." (AR. 24); *see also*
11 *Benecke,* 379 F.3d at 590 ("Fibromyalgia's cause is unknown, there is no cure, and it is
12 poorly-understood within much of the medical community.");  *Sarchet v. Chater,* 78 F.3d
13 305. 306 (7th Cir. 1996) (fibromyalgia is "a common, but elusive and mysterious disease,...").
14 Clearly, the ALJ was tasked with no easy feat.  Even when there is no doubt that a plaintiff
15 is afflicted with fibromyalgia, it is difficult to determine the severity of his or her condition
16 because of the unavailability of objective clinical tests.  *Sarchet,* 78 F.3d at 307.  "Some
17 people may have such a severe case of fibromyalgia as to be totally disabled from
18 working...but most do not...." *Id.*  Given the constellation of Plaintiff's severe and non-
19 severe impairments, the addition of medical evidence after examining Doctor Suarez
20 rendered his opinion, and the fact that Dr. Wristen's 2011 opinion should have been
21 considered but was not, it cannot be said that the ALJ stated specific and legitimate reasons
22 supported by substantial evidence in the record to reject Dr. Wristen's 2010 Work Tolerance
23 opinion.

24 **CONCLUSION**

25       For the foregoing reasons, remand of this matter is required for vocational expert
26 testimony regarding limitations on handling and for consideration of Dr. Wristen's 2011
27 opinion which may also involve consideration of medical expert testimony based on the
28 entire record and additional vocational expert testimony to assess the impact of Plaintiff's

limitations on her ability to work. Moreover, upon remand, the ALJ should clarify the requirement that Plaintiff needs to change positions.

**RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, remand this matter for further proceedings to consider whether Plaintiff is disabled under the Social Security Act.

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed.R.Civ.P. 72(b)(2). No replies to objections shall be filed unless leave is granted from the district court to do so. If objections are filed, the parties should use the following case number: **CV12-226-TUC-RCC.**

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to *de novo* review of the issues. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

DATED this 28th day of February, 2014.

_____
CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE

- 13 -